# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZIBALSTAR, L.C., a Utah Limited Liability Company, et al.,<br><br>       Plaintiffs,<br>v.<br><br>ROBERT CONTE, an individual, et al.,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS'** *EX PARTE* **MOTION FOR INJUNCTIVE RELIEF**<br><br>Case No. 2:17-cv-00563-JNP<br><br>District Judge Jill N. Parrish |

    Before the court is Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction pursuant to FED. R. CIV. P. 65. (Docket No. 3). Plaintiffs also request an emergency hearing regarding the Motion. As explained below, the court DENIES the Motion without hearing.

## BACKGROUND

    According to the instant Motion, Plaintiffs are owners and lessees of numerous commercial properties who hired Defendants and their agents (collectively, "Defendants" or "Conte-Hansen") to manage these properties on their behalf. Plaintiffs allege that Defendants and their agents have "seriously mismanaged" the properties. (Docket No. 3, at 10). This mismanagement, coupled with suspected fraud by certain Defendants and related contractual and property disputes, ostensibly led Plaintiffs to terminate Defendants as managers of their properties. Plaintiffs thereafter issued several cease-and-desist letters to some of the Defendants or their agents, "instructing them not to trespass on the premises of the Properties." (*Id.*). Defendants and their agents apparently ignored the termination of their contract and the cease-

and-desist letters by continuing to conduct their management responsibilities on the properties at issue and allegedly entering and damaging certain of the properties. A named Plaintiff, Gary Brinton, visited several properties to demand that Defendants' employees leave the property, but, by and large, the employees refused to leave absent a court order.

In the instant Motion, Plaintiffs allege that, since the termination, Defendants or their agents have continued to sell inventory purchased using funds belonging to Plaintiffs and have pocketed the proceeds at one property. They also allege that Defendants' agents have attempted to remove certain equipment from a storage shed on Plaintiffs' property. Plaintiff also suggests, though does not outright allege, that Defendants' agents eventually broke into the shed and stole the equipment. Additionally, Plaintiffs allege that "someone" attempted to break into a storage area at the same property, actually broke into the storage area the next day, "spread paint around on the walls and floors, and damaged or destroyed many of the pipes on the back of the laundry machines." (*Id.* at 13). Plaintiffs further allege that Defendants' agents recently stole "computer monitors, equipment, papers, and files" from one of Plaintiffs' properties. (*Id.* at 12).

On June 12, 2017, Plaintiffs filed an extensive and complex complaint, alleging multiple causes of action under federal and state law against Defendants. (Docket No. 2). Specifically, the complaint alleges that Defendants or their agents have violated the Racketeer Influence and Corrupt Organizations Act of 1978 ("RICO"), 18 U.S.C. §§ 1961, *et seq*., committed fraud related to real estate transactions between the parties, negligently misrepresented the status of a future real estate transaction between the parties, committed fraud related to their property management responsibilities, breached their property management contract, breached certain implied covenants, and failed to fulfill a promise regarding a future real estate transaction upon which Plaintiffs relied. (Docket No. 2, at 35–49). On the same day, Plaintiffs filed the instant

Motion, requesting an *ex parte* temporary restraining order ("TRO") and preliminary injunction, prohibiting Plaintiffs from trespassing on the properties at issue. (Docket No. 3). In their Motion, Plaintiffs also request an emergency *ex parte* hearing. The court now considers the Motion under authority derived from 28 U.S.C. §§ 1331, 1367.

## **DISCUSSION**

As explained above, Plaintiffs ask this court to issue an *ex parte* TRO and preliminary injunction against Defendants and their agents, prohibiting them from trespassing on certain properties owned or leased by Plaintiffs. The court notes at the outset that any form of preliminary injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotations and emphasis omitted) (quoting 11A C. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2948 (2d ed. 1995)); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." (quotations omitted) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)). The court will first address the exacting standard by which Plaintiffs' requests must be judged, then Plaintiffs' request for a preliminary injunction, then their request for a TRO, and finally their request for an emergency *ex parte* hearing.

    I.    STANDARD FOR DISFAVORED INJUNCTIVE RELIEF

As an initial matter, the court concludes that the relief requested in the instant Motion would disrupt the status quo and is therefore subject to closer scrutiny than other requests for injunctive relief. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975–76 (10th Cir. 2004) (per curiam); *Schrier*, 427 F.3d at 1259. The Tenth Circuit has

consistently held that injunctive relief that disrupts the status quo is disfavored and must be "more closely scrutinized" to ensure that relief is warranted. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Schrier*, 427 F.3d at 1259). "An injunction disrupts the status quo when it changes the 'last peaceable uncontested status existing between the parties before the dispute developed.'" *Id.* at 1070–71 (quoting *Schrier*, 427 F.3d at 1260). Here, the "last peaceable uncontested status existing between the parties" was apparently prior to the termination when Plaintiffs and Defendants had an ongoing contractual relationship regarding property management, as is plainly evidenced by Defendants' refusal to vacate the properties or cease operations upon request. An injunction or order forbidding Defendants or their agents to reenter or otherwise conduct business in accordance with this prior arrangement clearly disrupts the status quo existing prior to the instant dispute. Accordingly, the relief requested by Plaintiffs is disfavored and "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *See O Centro Espirita*, 389 F.3d at 975.

With this more exacting standard in mind, the court now turns to evaluation of the requested preliminary injunction and the requested TRO.

    II.      REQUEST FOR *EX PARTE* PRELIMINARY INJUNCTION

First, Plaintiffs appear to request an *ex parte* preliminary injunction. As Rule 65 flatly prohibits the issuance of an injunction without notice to the adverse party, *see* FED. R. CIV. P. 65(a)(1), the court denies this request outright.

    III.      REQUEST FOR *EX PARTE* TEMPORARY RESTRAINING ORDER

Next, the court considers Plaintiffs' request for an *ex parte* TRO. A movant seeking an *ex parte* TRO must satisfy two prerequisites. First, the movant must "clearly show" by "affidavit or

verified complaint . . . that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *Id.* 65(b)(1)(A). Second, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." *Id.* 65(b)(1)(B).

Once the movant has met these prerequisites, he must also demonstrate that he is entitled to preliminary injunctive relief. To obtain such relief in either the form of a TRO or a preliminary injunction, the moving party must establish:

> (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1254–55 (D. Colo. 2005) (citing *SCFC ILC*, 936 F.2d at 1098); *see also Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003). Again, because preliminary injunctive relief is an "extraordinary remedy," the movant must demonstrate that the right to relief is "clear and unequivocal." *Greater Yellowstone*, 321 F.3d at 1256.

A. PLAINTIFFS' REQUEST FOR A TRO MUST BE DENIED

In this case, the court need not fully evaluate the requirements spelled out above because Plaintiffs' request for injunctive relief fails for a more fundamental reason. Beyond the typical requirements for injunctive relief outlined above, "the movant must [also] establish 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). In other words, the movant "must [establish his right to relief] by clear proof that he will probably prevail when the merits are tried, so to this

5

extent there is a relation between temporary and permanent relief." *Penn v. San Juan Hosp. Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) (citing, *inter alia*, *Crowther v. Seaborg*, 415 F.2d 437 (10th Cir. 1969)); *McCormick v. City of Lawrence*, No. 02-2135-JWL, 2002 WL 31385811, at *3–*4 (D. Kan. 2002) (unpublished). Where a movant seeks injunctive relief that pertains to "a matter lying wholly outside the issues in the suit," *see De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945), the movant argues for the likelihood of success on merits that are wholly different from the merits of his underlying claims. This disjuncture contravenes the primary purpose of an injunction or temporary restraining order, which is to preserve the status quo and thereby preserve the district court's decision making power over the merits of the movant's lawsuit. *See Devose*, 42 F.3d at 471 (citing *Penn*, 528 F.2d at 1185) ("It is self-evident that [plaintiff's] motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of [plaintiff's] . . . lawsuit."); *O Centro Espirita*, 389 F.3d at 977 (Murphy, J., concurring in part, dissenting in part) (indicating that the "paramount purpose" of a preliminary injunction is "to prevent the judicial process from being rendered futile by defendant's action or refusal to act"); *Hicks v. Jones*, 332 F. App'x 505, 508 (10th Cir. 2009) (unpublished) (explaining that a TRO "preserves the status quo pending a determination of a preliminary injunction" and, in turn, a preliminary injunction is "'appropriate to grant intermediate relief of the same character as that which may be granted finally'" (quoting *DeBeers*, 325 U.S. at 220)). Thus, "[a] district court should not issue an injunction when the injunction in question is not of the same character [as the relief requested in the complaint], and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (citing *De Beers*, 325 U.S. at 220); *Hicks*, 332 F. App'x at 508 ("[The

movant's] request for preliminary injunction/TRO . . . bore no relation to the merits of [his] . . . claim. Consequently, the preliminary injunction was properly denied.").

Here, the injunctive relief Plaintiffs seek bears at most a tangential "relationship with the conduct asserted in the complaint." *Little*, 607 F.3d at 1251. Plaintiffs' complaint alleges nine counts, including two claims pursuant to RICO, several fraud and conspiracy claims presumably under Utah law, a claim of negligent misrepresentation, breaches of contract and covenants of good faith and fair dealing, and a single claim of promissory estoppel. Each of these claims demand money damages for past conduct and revolve around a contractual dispute and allegations of fraud. Nowhere in the complaint do Plaintiffs make a claim for trespass, conversion, or damage to property.[1] Plaintiffs make no claim regarding the ownership or possessory interests they assert are threatened by Defendants' actions. Even more fundamentally, nowhere do Plaintiffs request injunctive relief for future conduct, such that there would be "a relationship between temporary and permanent relief." *Penn*, 528 F.2d at 1185. The allegation that Defendants' employees or agents are currently squatting on Plaintiffs' properties or violating their possessory rights after Plaintiffs terminated their contractual relationship is wholly distinct from the issues that led to the termination in the first place. Based on the legal claims asserted in the complaint, any relationship between the conduct at issue in this Motion and the conduct at issue in the complaint is attenuated and ultimately insufficient to justify the requested injunctive relief. Stated differently, the injunctive relief that Plaintiffs seek in this Motion is "not of the same character [that could be granted finally], and deal[s] with a matter that [is] wholly outside of the issues in the suit." *See Kaimowitz*, 122 F.3d at 43; *Little*, 607 F.3d at 1251; *Penn*, 528 F.2d

---

[1] The court acknowledges that Plaintiff's complaint briefly alleges the continued presence of Conte-Hansen employees and agents on various properties, (Docket No. 2, at 34), but again emphasizes that these implicitly alleged trespasses are not the subject of Plaintiffs' suit. Further, even for existing claims, Plaintiffs seek monetary damages for past conduct, not prospective injunctive relief.

at 1185; *Hicks*, 332 F. App'x at 508. Accordingly, the court declines to issue any injunctive relief related to Plaintiffs' allegations of trespass, conversion, or damage to property.[2]

B. ADDITIONAL REASONS JUSTIFYING DENIAL OF PLAINTIFF'S MOTION

Although the court believes that the above analysis conclusively disposes of Plaintiffs' claims for injunctive relief, there are additional independent reasons to deny Plaintiffs' Motion. First, Plaintiffs have only argued the likelihood that they will succeed on an "underlying trespass claim," (Docket No. 3, at 24), which is nowhere to be found in their complaint. As the relief that Plaintiffs request is disfavored, they must make "a strong showing . . . with regard to the likelihood of success on the merits." *Beltronics*, 562 F.3d at 1071 (quoting *O Centro Espirita*, 389 F.3d at 976). As described above, the "merits" that Plaintiffs must argue are those of the claims alleged in their complaint, not those of a wholly separate trespass claim unrelated to their complaint. *See Little*, 607 F.3d at 1251; *Penn*, 528 F.2d at 1185; *Hicks*, 332 F. App'x at 508. Accordingly, Plaintiffs have failed to make any showing, let alone a "strong" showing of success on the merits of their claims. *See Beltronics*, 562 F.3d at 1071. This failure precludes issuance of any injunctive relief.

Additionally, Plaintiffs have failed to demonstrate any truly irreparable harm beyond the possessory and property interests that the court disposed of above. Instead, any residual harm to Plaintiffs appears to be fully compensable by money damages after a proper adjudication on the merits. Harm is truly irreparable when "the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *See*

---

[2] Moreover, even if the court were to accept that such a relationship exists, Plaintiffs have utterly failed to demonstrate a substantial likelihood of success on the merits for trespass in four out of the five states where they claim trespass has occurred. Plaintiffs have only presented the court with the governing trespass law for Utah. The court cannot decide whether trespass occurred in Oklahoma, Texas, Nevada, or Idaho by referring to the law of Utah.

*Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). Plaintiffs' have not satisfactorily demonstrated that monetary damages would be inadequate to compensate them for the alleged harm or that their damages would be difficult to ascertain. For example, the monetary damage resulting from unauthorized sale of Plaintiffs' inventory by Defendants' agents may be easily ascertained because, as Plaintiffs indicate, the inventory was purchased with their funds. (Docket No. 3, at 11). Similarly, Plaintiffs' claims of property damage and conversion are fully compensable by a monetary remedy after an appropriate determination of such torts on the merits.

Finally, Plaintiffs have not provided satisfactory reasons why notice to Defendants "should not be required"—a necessary showing in order to obtain an *ex parte* TRO. *See* FED. R. CIV. P. 65(b)(1)(B). Plaintiffs argue that Defendants' agents have "escalated their actions of trespass, conversion, and destruction" since the issuance of cease-and-desist letters, and that "further notice would only provoke further escalation by the Conte-Hansen Agents prior to relief from this [c]ourt, so any further notice should not be required." (Docket No. 3, at 14). While these alleged damages are certainly not inconsequential, the possibility of their recurrence is purely speculative. Rule 65(b)(1)(A) requires a *clear* showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" before an *ex parte* TRO may be issued. FED. R. CIV. P. 65(b)(1)(A). Since Plaintiffs' accusations are limited to a handful of instances, and any possibility of recurrence is essentially speculative, they have failed to demonstrate a truly "significant risk of irreparable harm." *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Moreover, the potential for additional conversion or property damage is not truly "*irreparable* injury, loss, or damage," FED. R. CIV. P. 65(b)(1)(A) (emphasis added), and may be compensated by a monetary award upon

conclusion of a suit actually dealing with the merits of these alleged malfeasances, *see Kikumura*, 242 F.3d at 963 ("A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain.").[3]

For these reasons, as well as those articulated in the previous section, the court must deny Plaintiffs' request for injunctive relief.

IV. REQUEST FOR EMERGENCY *EX PARTE* HEARING

Finally, Plaintiffs have requested an emergency *ex parte* hearing regarding their motion. Rule 65 does not explicitly require the court to hold a hearing and the court is unaware of any other authority requiring such a hearing. *See* FED. R. CIV. P. 65; *id.* 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191 (Table), 1998 WL 339465, at *3 (10th Cir. 1998) (unpublished) (explaining that the appellant "failed to cite any Tenth Circuit authority that requires a district court to hold an evidentiary hearing prior to granting or denying a preliminary injunction motion" and affirming that "the district court is free to [hold a hearing] within its own discretion"); 11A FED. PRAC. & PROC. CIV. § 2949 (3d ed. 2017) ("[P]reliminary injunctions are denied without a hearing, despite a request for one by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless."). Under local rules, "request for oral arguments on motions will be granted on good cause shown." DUCivR 7-1(f). Based on the previous determination that Plaintiffs are not

---

[3] Additionally, the court is hesitant to grant such drastic relief without any input from Defendants. Indeed, as troubling as Plaintiffs' allegations are, there are always two sides to every story. For example, while Plaintiffs' exhibits ostensibly demonstrate ownership or possessory interest in some of the properties at issue, the court notes that there is no indication in the briefing on this issue or in Plaintiffs' other filings of the exact nature of the contractual relationship between Plaintiffs and Defendants or of the terms by which their management contracts may be terminated. Such information would be crucial to the proper resolution of Plaintiffs' allegations.

entitled to relief, the court sees no reason to hold an emergency hearing. Accordingly, the court denies Plaintiffs' request.

## **CONCLUSION**

Based on the foregoing and the more stringent standard applied to the relief Plaintiffs request, the court concludes that Plaintiffs' Motion for injunctive relief (Docket No. 3) must be **DENIED**. It appears that Plaintiffs are seeking a one-stop-shop for all of their grievances against Defendants. But the court simply cannot provide such a service; the emergency relief Plaintiffs seek is not relief to which they would be entitled under their complaint even if they succeeded on the merits of the claims alleged therein.

IT IS SO ORDERED.

Signed this 14th day of June, 2017.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge