IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZIBALSTAR, L.C., a Utah Limited Liability Company, *et al.*,<br><br>     Plaintiffs,<br>v.<br><br>ROBERT CONTE, an individual, *et al.*,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-CV-563<br><br>District Judge Jill N. Parrish |

Before the court are eight motions to dismiss filed by the numerous defendants in this case. Defendants Theodore "Ted" Hansen; Branden Hansen; Jeffrey Munoz; David Turner; Charles Hanna; Eric Manriquez; Robert Garcia; Lorin Quayle; Estrella Group LLC; Estrella OK LLC; Estrella P M LLC; Zurich Holdings Limited Liability Company; Trophy Properties NV LLC; Heathrow Holdings, LLC; Flintshire Holdings, LLC; Low Cost Rentals, LLC; Junction Market VII, LLC; and Blue Fun Group, LLC filed their motion on August 10, 2017 (ECF No. 95). Defendants Lester Perry and Raymond Weller filed their motion on August 11, 2017 (ECF No. 96). Defendant Paul Halliday, Jr. filed his motion on August 18, 2017 (ECF No. 101). Defendant Samuel Fairchild filed his motion on August 21, 2017 (ECF No. 103). Defendants Robert Conte; Courtside Condominiums, LC; and WCMF, Inc. filed their motion on September 5, 2017 (ECF No. 118). Defendants Bank of the West, Andrew Warwood, and Jacob Peterson filed their motion on September 18, 2017 (ECF No. 120). Defendant Mike Grande filed his motion on September 19, 2017 (ECF No. 122). And David Odenath filed his motion on October 6, 2017 (ECF No. 140).

Each defendant argues, among other things, that the plaintiffs' RICO claims are insufficiently pled under Rule 12(b)(6). The court agrees. For the reasons below, the court grants those motions in part and dismisses the plaintiffs' RICO claims. Because those claims form the sole basis for this court's jurisdiction, and because there is no motion to amend the complaint pending, the court dismisses the remaining claims for lack of subject-matter jurisdiction.

## I.     BACKGROUND[1]

Plaintiff Gary Brinton is a Utah citizen. Directly or indirectly, he owns or manages each of the plaintiff entities in this action. On February 19, 2016, Ted Hansen spoke with Mr. Brinton about entering into a series of real property transactions involving properties owned or previously owned by a third party, Mr. Conte. The transactions offered intrinsic tax benefits: Section 1031 of the Internal Revenue Code allows property owners to defer capital gains tax using like-kind exchanges. But Mr. Hansen offered more. He described a vague "Forthcoming Real Estate Transaction," wherein some new group or entity would someday purchase newly-acquired, rehabilitated, and stabilized properties from Mr. Brinton's entities at double their cost.

Mr. Brinton was persuaded, and from June 2016 to March 2017, fourteen transactions took place. In some cases, Mr. Brinton's entities entered into master leases with an option to purchase certain properties from Mr. Conte. In others, the entities purchased properties from Mr. Conte, Ted Hansen, and Ted's brother Branden. And in others still, the entities sold properties they owned to Mr. Conte with a lease-back to the plaintiff entities and an option to purchase from Mr. Conte. In the midst of these transactions, Mr. Brinton and his entities also gave Ted Hansen and the Estrella Entities access to their accounts at Bank of the West and allowed those defendants to print signed checks drawing on the plaintiffs' accounts.

---

[1] As always on a motion to dismiss, the court accepts the well pleaded facts of the complaint as true and draws reasonable inferences in favor of the plaintiffs.

After nearly a year of transactions, the relationship suddenly soured. And on June 12, 2017, Mr. Brinton and his entities filed suit in this district. They allege state-law fraud, state-law conversion, state-law breach of fiduciary duties, state-law conspiracy, state-law negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, trespass, common-law lender liability, alter ego, violations of the Utah Pattern of Unlawful Activity Act, Utah Code Ann. § 76-10-1601 *et seq*., and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

The plaintiffs' allegations arise from five general grievances. First, they paid too much for several of the properties they purchased. Second, holdover property managers mismanaged newly-acquired properties, diverting income and assets. Third, the holdover property managers refused to leave the properties when fired. Fourth, the Forthcoming Real Estate Transaction was a scam. And fifth, several defendants used the plaintiffs' bank accounts in a check-kiting scheme.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted). The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, in evaluating a complaint on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## III.     ANALYSIS

In this action, federal jurisdiction rests solely on the plaintiffs' RICO claims. Title 18 U.S.C. § 1964(c) provides a private right of action for persons injured in their business or property by reason of a violation of § 1962. Section 1962 contains four subsections. A review of the complaint reveals that the plaintiffs have failed to state a claim under any of those subsections.

### A. SECTION 1962(A)

Section 1962(a) makes it unlawful for any person who has received income "from a pattern of racketeering activity . . . <u>to use or invest</u>, directly or indirectly, any part of such income, or the proceeds of such income, <u>in acquisition of any interest in, or the establishment or operation of, any enterprise</u> which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a) (emphasis added). Notably, the statute does not make it unlawful to *receive* racketeering income. Instead, it prohibits a person receiving such income from then *using or investing it* in the proscribed manor. *Grider v. Tex. Oil & Gas Corp.*, 868 F. 2d 1147, 1149 (10th Cir. 1989). Consequently, to state a claim under § 1962(a), a plaintiff "must plead facts tending to show that he was injured by the use or investment of racketeering income.

Injury from the racketeering acts themselves is not sufficient because section 1962(a) does not prohibit those acts." *Id.*[2]

The plaintiffs argue that their complaint alleges facts tending to show injury from use or investment of racketeering income. They point to allegations that Messrs. Ted Hansen, Branden Hansen, Conte, Hanna, Turner, Manriquez, Grande, Quayle, and Munoz (the "Property Managers") "diverted property income and assets from properties owned or leased by Plaintiffs." ECF No. 124 at 9 (citing ECF No. 15 at ¶¶ 84, 85, 96, 97, 127, 128, 134, 135, 143, 144, 149, 150, 158, 159, 167, 168, 176, 177, 180, 181, 222, and 232). But ¶¶ 84, 96, 127, 134, 143, 149, 158, 167, 176, and 180 allege no injury whatsoever. And none of the remaining paragraphs allege that any of the Property Managers acquired any interest in, established, or operated an enterprise engaged in, or whose activities affect, interstate or foreign commerce. Instead, they allege that the Property Managers diverted property income and assets. In one instance, the plaintiffs allege that Mr. Manriquez diverted assets to a competitor. *See* ECF No 15 at ¶ 97. But those assets (building materials, tools, and workers) are not "income" or the "proceeds of such income" under RICO.[3]

---

[2] Plaintiffs misconstrue Supreme Court precedent when they argue to the contrary. In *Sedima, S.P.R.L. v. Imrex Co.*, the Court noted that plaintiffs injured by the racketeering activities themselves have a claim under § 1964(c). 473 U.S. 479, 495 (1985). This remains good law. But Sedima's allegations claimed a violation of §1962(c). That Sedima could state a claim under § 1962(c) for harm resulting directly from predicate acts does not mean Mr. Brinton and his entities can state a claim under § 1962(a) for similar harm.

[3] Black's Law Dictionary defines income as "[t]he money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like." *Income*, Black's Law Dictionary (10th ed. 2014).

Absent allegations that the plaintiffs suffered injury from use or investment of racketeering income in a proscribed manner, the plaintiffs lack standing to bring a claim under 18 U.S.C. § 1962(a).[4]

## B. SECTION 1962(B)

Section 1962(b) makes it unlawful for any person "through a pattern of racketeering activity . . . <u>to acquire or maintain</u>, directly or indirectly, <u>any interest in or control of any enterprise</u> which is engaged in, or the activities of which affect, interstate or foreign commerce." § 1962(b) (emphasis added). As with subsection (a), subsection (b) does not make it unlawful to collect income from racketeering activity or even to participate in racketeering activity itself. Instead, what is unlawful is using a pattern of racketeering activity to acquire or maintain an interest in or control over an enterprise.

The plaintiffs' complaint alleges generally that all individual defendants "have used the pattern of racketeering activity of multiple predicate acts of mail fraud to acquire or maintain control of many enterprises previously held by Plaintiff Brinton." ECF No. 15 at ¶ 229. And the plaintiffs point to ¶¶ 88 and 101 for specific examples. But ¶ 88 involves only a real estate purchase accomplished in part through a like-kind exchange. There is no allegation that any defendant acquired or maintained an interest in or control of an enterprise.[5]

---

[4] The plaintiffs' § 1962(a) claims also fail because the plaintiffs failed to plead an underlying pattern of racketeering activity. See the court's discussion regarding § 1962(c), below.

[5] The plaintiffs argue that gas stations and residential rental properties constitute enterprises. But an enterprise is "an individual, partnership, corporation, association, union, other legal entity, or group of individuals associated in fact, although not a legal entity." *Enterprise*, Black's Law Dictionary (10th ed. 2014). The entities that manage gas stations and rental properties are certainly enterprises. The properties themselves are not.

On the other hand, ¶ 101 does involve acquisition of an enterprise. That paragraph alleges that Mr. Conte purchased Courtside Condominiums, LC. But nowhere in the complaint do the plaintiffs allege that Courtside Condominiums, LC is an enterprise engaged in, or whose activities affect, interstate commerce. All the plaintiffs have alleged with regard to Courtside Condominiums, LC is that it "owned (and still owns) the Courtside Property, which were [sic] leased back to Plaintiff ZibalStar." ECF No. 15 at ¶ 101.

Absent allegations that any defendants acquired or maintained an interest in or control over an enterprise engaged in (or whose activities affect) interstate or foreign commerce, the plaintiffs lack standing to bring a claim under 18 U.S.C. § 1962(b).[6]

## C. SECTION 1962(C)

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, <u>to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.</u>" § 1962(c) (emphasis added). The plaintiffs' claims for violations of § 1962(c) are more tenable than their claims under the previous subsections, but they still fail.

The Tenth Circuit has held that plaintiffs asserting claims for violations of § 1962(c) "'must plausibly allege that' the defendants 'each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)). The Tenth Circuit's use of the word "each" in *Hickenlooper* and *George* was

---

[6] As with their § 1962(a) claims, the plaintiffs' § 1962(b) claims also fail because the plaintiffs have failed to plead an underlying pattern of racketeering activity. See the court's discussion regarding § 1962(c), below.

not arbitrary. The language of § 1962(c) does not make it unlawful for an *enterprise* to conduct its own affairs through a pattern of racketeering activity. In fact, "§ 1962(c) requires that the 'person' conducting the enterprise's affairs be distinct from the 'enterprise.'" *George*, 833 F.3d at 1249. Rather, it is unlawful for a *person* to conduct the affairs of an enterprise *through* a pattern of racketeering activity. Consequently, it is not enough to allege that a RICO enterprise conducted its affairs through a pattern of unlawful activity and that the several defendants are part of the enterprise.  Instead, to state a RICO claim against a person under §1962(c), the plaintiffs must allege that each defendant conducted the affairs of an enterprise through the defendant's own pattern of racketeering activity.[7] But a review of the complaint reveals that not only have the plaintiffs failed to plead a pattern of racketeering activity as to each defendant, they have failed to plead a pattern of racketeering activity as to any defendant. Indeed, they manage to plead only one RICO predicate act.

At a bare minimum, a "pattern" of racketeering activity requires two predicate acts. 18 U.S.C. § 1961(5). And plaintiffs must plead the elements of such acts. *See Nielsen v. The Patriot Grp., LLC*, No. 1:15-cv-00137, 2016 WL 407073, at * 3 (D. Utah Feb. 2, 3016). At oral argument, counsel for the plaintiffs affirmed that the RICO predicate acts on which the plaintiffs' § 1962(c) claims are based are limited to mail and wire fraud. Mail and wire fraud are federal crimes defined under 18 U.S.C. §§ 1341 and 1343, respectively. Mail fraud involves two distinct elements: "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the

---

[7] In *Hickenlooper*, the Tenth Circuit noted that the plaintiffs "alleged various actions *each* of the Marijuana Growers took to establish and operate the enterprise." 859 F.3d at 884 (emphasis added). And in *George*, the Tenth Circuit separately analyzed whether defendants Bank of America and Urban Lending Solutions had each participated in a pattern of racketeering activity. 833 F.3d at 1248.

purpose of executing the scheme." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citation omitted). Wire fraud is "very similar" but involves use of "interstate wire, radio or television communications in furtherance of the scheme to defraud." *Id.* (citation omitted).

The complaint alleges dozens of misrepresentations made in person or by phone. But in-person misrepresentations do not implicate federal mail or wire fraud. Neither do intrastate telephone calls. *See Utz v. Correa*, 631 F. Supp. 592, 596 (S.D.N.Y. 1986) (a RICO predicate act of wire fraud "requires an interstate telephone call"). In fact, only nine allegations contained in the complaint come close to satisfying the requirements of federal mail or wire fraud under 18 U.S.C. §§ 1341 and 1343:

1. In mid-June 2016, Mr. Conte told Mr. Brinton over the phone that certain properties were worth $2.9 million. *Id.* at ¶ 79.

2. In late June 2016, Mr. Conte told Mr. Brinton over the phone that Mr. Grande had integrity and was a good manager. *Id.* at ¶ 84.

3. In July 2016, Mr. Conte told Mr. Brinton over the phone that a property was worth over $18.5 million despite having just been told by a real estate professional that the property was worth only $12 million. *Id.* at ¶ 91, 93.

4. In July 2016, Mr. Conte told Mr. Brinton by email that a property was worth over $18.5 million despite having just been told by a real estate professional that the property was worth only $12 million. *Id.* at ¶ 91, 93.

5. In mid-July 2016, Mr. Conte told Mr. Brinton over the phone that Mr. Garcia was honest, was a pastor, and could be trusted. *Id.* at ¶ 127.

6. Also in July 2016, Mr. Conte told Mr. Brinton over the phone that Mr. Manriquez was a competent property manager who could be trusted. *Id.* at ¶¶ 96, 112.

7. Mr. Conte forwarded a letter dated August 30, 2016. *Id.* at ¶ 69.

8. Sometime in September 2016, Ted Hansen called Mr. Odenath. With Mr. Brinton on the line, Mr. Odenath represented that he was working with Mr. Hansen to put together the Forthcoming Real Estate Transaction, that he had extensive experience putting together real estate transactions of the type, and that he specifically apportioned $750,000,000 of a $1,000,000,000 fund to

purchase properties from Mr. Brinton and his entities. *See* ECF No. 15 at ¶¶ 70, 245.

9. In November 2016, Mr. Conte texted Mr. Brinton to say that if Mr. Brinton wanted Mr. Conte's cooperation, Mr. Brinton would let Mr. Manriquez run certain properties. *Id.* at ¶¶ 96, 112.

Of these nine allegations, five do not allege where Mr. Conte was when he participated in certain phone calls. The complaint alleges that Mr. Conte is citizen of Nevada, but there is nothing in the complaint to suggest that he was in Nevada at the time the calls took place. The same goes for Mr. Odenath's phone call (he is a citizen of Florida, but there is no allegation he was in Florida at the time of the call) and Mr. Conte's text message (there is no allegation regarding Mr. Conte's location when he texted Mr. Brinton).

That leaves Mr. Conte's July 2016 email to Mr. Brinton and the August 30, 2016 letter Mr. Conte forwarded to Mr. Brinton. The court may reasonably infer that the email traveled by interstate wire, but there is no allegation regarding how Mr. Conte forwarded the August 30, 2016 letter. Mail fraud requires use of the U.S. Mails or an interstate private or commercial carrier. But from the language of the complaint, it is unclear whether Mr. Conte mailed the letter in question or simply delivered it.[8]

---

[8] The allegations regarding the forwarded letter also fail to satisfy Rule 9(b)'s particularity requirement. The Tenth Circuit "has held that RICO predicate acts based on fraud must be stated with the particularity required by Fed. R. Civ. P. 9(b)." *Smith v. Figa & Burns*, 69 F. App'x 922, 925 (10th Cir. 2003). This requirement "is especially important, as here, where the predicate fraud allegations provide the only link to federal jurisdiction." *Id.* (citation omitted). To satisfy the particularity requirements of Rule 9(b), the plaintiffs must specify the time, place, and content of the alleged false representation, the identity of the party making the false statements and the consequences thereof, and how the particular mailing or transaction furthered the fraudulent scheme. But the complaint only alleges that "Defendant Conte also made misrepresentations on multiple occasions to Plaintiff Brinton as to the value of the properties . . . including by forwarding a letter dated August 30, 2016." ECF No. 15 at ¶ 69.

In sum, the plaintiffs have only pled one RICO predicate act: Mr. Conte's July 2016 email regarding the value of a property. By definition, a pattern of racketeering activity requires at least two predicate acts. Therefore, the plaintiffs have failed to plead a pattern of racketeering activity under § 1962(c).

## D. SECTION 1962(D)

Section 1962(d) makes it illegal "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)." *Tal v. Hogan*, 453 F. 3d at 1270. "If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Id.* Therefore, because the plaintiffs have failed to allege a sufficient claim under subsections (a), (b), or (c), their subsection (d) conspiracy claim fails as a matter of law.

## IV. ORDER

The plaintiffs have failed to state a claim under RICO, so the plaintiffs' two RICO claims are **DISMISSED WITHOUT PREJUDICE**. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). Because this case is in its infancy and the only federal claims were deficient at the outset, the court is not inclined to exercise jurisdiction over the remaining claims. Consequently, the remaining claims are also **DISMISSED WITHOUT PREJUDICE**, and all outstanding motions are **DENIED AS MOOT**.[9] The clerk of the court is directed to close the case.

---

[9] In their memoranda opposing the motions to dismiss, the plaintiffs request an opportunity to amend their complaint for a second time. ECF No. 124 at i; ECF No. 127 at i; ECF No. 157 at i.

Signed March 27, 2018

BY THE COURT

_Jill N. Parrish_

_____

Jill N. Parrish
United States District Court Judge

_____

But after amending as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). And in this district, "[n]o motion . . . may be included in a response or reply memorandum. Such motions must be made in a separate document." DUCivR 7-1(b)(1)(A). Furthermore, "a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *Calderon v. Kan. Dept. of Social & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999). The plaintiffs' identical, one-sentence requests to amend their complaint "in the event any of the pending motions to dismiss are granted" do not give this court or the defendants any hint as to the basis of a proposed amendment.